IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| VICKI LOUISE GARNER, )<br>)<br>Plaintiff, )<br>) | 6:13-CV-01428-JO |
| v. )<br>) | |
| CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>) | OPINION AND ORDER |
| Defendant. ) | |

JONES, J.,

Plaintiff Vicki Garner appeals the Commissioner's decision to deny her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Garner alleged disability beginning May 18, 2007, due to degenerative disc disease, shoulder pain, nausea, dehydration, blackouts, fibromyalgia, high cholesterol, hypertension, and depression. Admin. R. 19, 22, 167, 209. The ALJ applied the five-step disability determination process described in the regulations. Admin. R. 21-29.

1 - OPINION AND ORDER

The ALJ found Garner's ability to work limited by the combined effects of degenerative disc disease, past fusion surgery in the cervical region of the spine, fibromyalgia, and major depressive disorder. Admin. R. 21-22. The ALJ found that, despite her impairments, Garner retained the residual functional capacity ("RFC") to perform a range of sedentary work involving approximately two hours of standing or walking and six hours of sitting during the work day. He found that she had limited ability to push, pull, reach over head, climb, and engage in postural activities such as stooping, kneeling, and crawling. The ALJ found Garner limited to simple, routine tasks that can be learned in 30 days or less and involve only occasional contact with the public. Admin. R. 24.

The vocational expert ("VE") testified that a person of Garner's age, education, work experience, and RFC could perform the requirements of sedentary, unskilled occupations such as stuffer, eyeglass frame polisher, and surveillance system monitor, representing several hundred thousand jobs in the national economy. Admin. R. 28-29, 41-42. The ALJ concluded that Garner was not disabled for the purposes of the Social Security Act. Admin. R. 29.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence need not be a preponderance; it is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if another rational interpretation is also supported. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Garner contends the ALJ improperly discounted her credibility and rejected the opinion of Scott Johnson, M.D., her primary care physician. She contends the ALJ should have given greater weight to the opinion of Linda Jensen, M.D., an agency reviewing physician. Garner argues these errors led the ALJ to elicit testimony from the vocational expert with hypothetical assumptions that did not accurately reflect her functional limitations.

### II. Credibility Determination

In her application, Garner alleged she could not work because of the combined effects of a degenerative condition of the spine, fibromyalgia, and major depression. She said these conditions caused pain, fatigue, and inability to focus on job duties. Admin. R. 25, 209. At the administrative hearing, Garner testified that fatigue and pain made it necessary for her to lie down several times per day for up to 30 minutes at a time and take a three-hour nap in the afternoon. Admin. R. 25, 62. Garner also said she sometimes blacked out and would be in too much pain to get to work if she had a job. Admin. R. 58-62.

The ALJ found that Garner's medical condition reasonably could be expected to impose some degree of the limitations she claimed, but that Garner's statements about the limiting effects of her symptoms were not credible insofar as she claimed limitations that exceeded those in the RFC assessment. Admin. R. 25. Thus, the ALJ did not credit Garner's claims that she required an extended nap each day and frequent 30-minute breaks to lie down or that her symptoms would prevent her from getting to a place of employment. The ALJ acknowledged that Garner might experience some degree of discomfort while performing sedentary work within the limitations of her

3 - OPINION AND ORDER

RFC, but did not believe Garner's assertion that her symptoms would preclude all work. Admin. R. 25-26.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

An ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-97p, 1996 WL 374186, at *5.

The ALJ considered the proper factors here. He found the objective medical evidence and treatment history inconsistent with Garner's assertion of disabling symptoms. Admin. R. 26. The ALJ relied on the treatment notes of Peter Kosek, M.D., who managed Garner's pain treatment from 2005 through March 2009. At his initial evaluation of Garner, two years before the alleged onset of her disability, Dr. Kosek obtained generally normal objective findings, including full range of motion in all extremities, normal gait and station with full motor strength and muscle tone throughout. Admin. R. 26, 564-65. Garner reported a history of fusion surgery in the cervical spine but her only clinical findings were a somewhat limited range of left tilt motion in the neck and some left sided tenderness in the neck. Admin. R. 564. Dr. Kosek examined Garner five times during the two years before her disabling pain allegedly began, and his clinical findings remained unchanged.

Admin. R. 516, 519, 521, 534-35, 550-51. Notably, Dr. Kosek did not indicate any change in his clinical findings near the time Garner's disability allegedly began.

After the alleged onset of Garner's disability, Dr. Kosek continued to manage her pain treatment and consistently obtained generally benign clinical findings in numerous physical examinations. Garner had limited range of motion for tilting her neck to the left and limited range of motion for internal rotation of her left arm. She consistently had negative Spurlings tests for radicular pain, normal gait and station, full function of the lower extremities, full motor strength and normal muscle tone without any indication of atrophy that would result from disuse or inactivity. Admin. R. 442-45, 448, 452, 456, 460-61, 464, 469, 472-73, 477-78, 481, 486, 490, 495, 503. The ALJ reasonably concluded that these objective findings were more consistent with the ability to engage in a limited range of sedentary activities within the restrictions of Garner's RFC than with total disability. Admin. R. 26.

The ALJ also relied on the opinion of Richard Alley, M.D., a state agency medical expert. Admin. R. 27. Dr. Alley reviewed all the medical evidence available in November 2009, and concluded that it was consistent with the ability to perform a sedentary range of work with restrictions on postural and manipulative activities. Admin. R. 27, 593-600.

With regard to mental functioning, the ALJ discounted Garner's assertion of debilitating concentration deficits. Admin. R. 23-24, 27. He relied on the findings of Alison Prescott, Ph.D., who found that Garner appeared to be depressed but demonstrated fairly good concentration, memory, insight, and judgment and appeared to be of average intellectual functioning. Admin. R. 358. The ALJ found that Dr. Prescott's opinion suggested Garner could perform only simple,

routine, unskilled work without distractions from interactions with the public, but did not support Garner's assertion that she could not do any work. Admin. R. 27.

The objective medical and clinical evidence conflicts with Garner's assertions regarding the disabling effects of her symptoms. Conflicts between the claimant's subjective complaints and the objective medical evidence in the record undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ also relied on Garner's treatment history with her counselor. Garner reported good results from therapy with diminished feelings of depression, increased activity, and better ability to interact with others, including her supervisor at work with whom she had experienced difficulty previously. Despite responding well to treatment, Garner terminated therapy and became preoccupied with her physical pain and her application for disability benefits. Admin. R. 26, 383. When a claimant makes subjective statements about disabling symptoms, but fails to comply with effective treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ also found Garner's reported activities were inconsistent with the extreme limitations she claimed. Garner reportedly performed a typical range of household chores, including meal preparation, laundry, cleaning, dusting, watering plants, reading, driving, playing computer games, and independently performing personal care activities. She was able to go out into the public independently to shop. Admin. R. 23, 27, 222-23, 357-58. Contrary to Garner's statement at the hearing that she would be in too much pain to get to a place of employment, Garner was able to travel to care for a relative who had suffered a stroke. Admin. R. 26, 444. The ALJ reasonably

found these activities suggested Garner was more capable of activity than she claimed. Admin. R. 26.

The ALJ also relied on Garner's statements to her physicians that her pain medications were working fairly well and that she felt no need to change her prescription. Admin. R. 27, 442. Medical conditions that are effectively controlled and symptoms that are alleviated by medications are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The Commissioner points out that Garner engaged in drug seeking behavior suggesting she exaggerated her subjective pain in order to obtain narcotic pain medications. Def.'s Br. At 7. The record suggests that Garner had issues with compliance and overuse of narcotic medications. Admin. R. 444, 450, 454, 461, 465, 606. However, the ALJ did not base his credibility determination on this factor and it plays no part in my review of the agency decision. *Connet v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to satisfy me that the ALJ did not arbitrarily reject Garner's subjective statements. His reasons are clear and convincing and rest on rational inferences drawn from the record. Accordingly, the ALJ's credibility determination was not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III. Dr. Johnson's Opinion

Dr. Johnson provided routine primary care to Garner during the time that is relevant for her claim. In October 2011, Dr. Johnson completed a worksheet indicating diagnoses of degenerative disc disease and fibromyalgia and listing Garner's subjective complaints of chronic pain, fatigue, and depression. Admin. R. 829. Dr. Johnson said that Garner rested during the day because physical

7 - OPINION AND ORDER

activity was painful. Admin. R. 831. He opined that Garner would not be capable of sedentary work because she told him she often could not do basic activities of daily living. Admin. R. 831. He opined that Garner would miss work more than twice per month because work would exacerbate her condition. Admin. R. 832. The ALJ gave this opinion little weight. Admin. R. 26.

As the ALJ noted, a treating physician's opinion is entitled to great weight when it is well supported by objective medical findings and is consistent with the record as a whole. Admin. R. 26. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ can reject a physician's opinion in favor of the conflicting opinions of others, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An opinion that is not contradicted may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57.

Here the ALJ found that Dr. Johnson's opinion was not supported by clinical findings in his treatment notes. The record supports this conclusion. Dr. Johnson saw Garner a number of times but did not record any abnormal clinical findings. Admin. R. 605, 606, 611, 663, 837. In March 2011, he saw Garner for subjective pain and swelling in the knee, but Dr. Johnson found only low level effusion with normal range of motion and no structural cause for her symptoms. Other than noting that Garner had developed a tolerance for her opiate medications, Dr. Johnson did not make abnormal clinical findings that would support his disability opinion. Admin. R. 809. The ALJ properly discounted Dr. Johnson's opinion because it was not supported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

In the absence of clinical findings, the ALJ reasonably concluded that Dr. Johnson's opinion was premised primarily on Garner's subjective statements about the limiting effects of her symptoms. Admin. R. 26. This conclusion is further supported by notes reflecting that in October 2011, Garner had an office visit with Dr. Johnson to prepare paperwork in support of her social security claim. Garner provided Dr. Johnson with a detailed subjective description of her limitations "for the purpose of clarifying the degree to which she is impaired." Admin. R. 835. The ALJ reasonably concluded that Garner's subjective description of her symptoms formed the basis of Dr. Johnson's opinion. Admin. R. 26-27. An ALJ may reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ also found Dr. Johnson's opinion inconsistent with the voluminous records of Dr. Kosek, described previously, which revealed that Garner's degenerative condition limited her range of motion for tilting her head to the left and rotating her left arm, but did not suggest debilitating symptoms. Dr. Kosek consistently obtained negative Spurlings test results for nerve root pain and Garner demonstrated normal station and ambulation, normal function of the lower extremities, full motor strength throughout, and no atrophy to suggest inactivity or disuse of any muscle group. Admin. R. 442-45, 448, 452, 456, 460-61, 464, 469, 472-73, 477-78, 481, 486, 490, 495, 503. The ALJ's explanation for giving Dr. Johnson's opinion diminished weight is clear and convincing and supported by substantial evidence. *Thomas*, 278 F.3d at 757. I find no error.

## IV. <u>Dr. Jensen's Opinion</u>

The Commissioner relies on state agency medical consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose.

The state agency medical consultants do not treat or examine the claimant, but form their opinions by reviewing the evidence in the record. An ALJ must consider the findings and opinions of the state agency medical consultants. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Here, the Commissioner obtained opinions on Garner's physical functional limitations from two state medical consultants, Dr. Jensen and Dr. Alley.

Dr. Jensen reviewed the record as it existed in March 2008. She opined that Garner was restricted to sedentary exertion with limitations in manipulative and postural activities. Admin. R. 348-55. With respect to reaching, Dr. Jensen said Garner was "limited to occasionally reaching with [left arm] including overhead." Admin. R. 351.

In November 2009, Dr. Alley reviewed the entire record again, including Dr. Jensen's opinion, all the evidence Dr. Jensen had seen, and all the additional evidence produced in the 20-month interim following Dr. Jensen's review. Like Dr. Jensen, Dr. Alley also concluded that Garner was restricted to sedentary exertion with limitations in manipulative and postural activities. Admin. R. 593-600. With respect to reaching, Dr. Alley said Garner was limited to occasional overhead reaching bilaterally. Admin. R. 596.

Garner contends the ALJ should have given greater weight to Dr. Jensen's opinion regarding reaching limitations in all directions and less weight to Dr. Alley's opinion that her limitation is only in overhead reaching. Pltf.'s Br. 19. During the administrative hearing, the ALJ said Dr. Alley's opinion regarding Garner's reaching limitation revised the earlier opinion of Dr. Jensen. Admin. R. 72. It is reasonable to infer from this statement, that the ALJ believed Dr. Alley's more recent opinion formed the final state agency opinion because it was more recent and based on a greater body of evidence covering a much greater period of time and reflected a more longitudinal and accurate

picture of Garner's condition. Dr. Jensen's preliminary opinion was revised and superseded by Dr. Alley's opinion. Accordingly, I find the ALJ did not fail to consider the state agency medical expert's opinion.

To the extent the ALJ erred by omitting to discuss Dr. Jensen's opinion in his written decision, I find the error harmless. Garner argues that the reaching limitation in Dr. Jensen's opinion would preclude two of the occupations identified by the VE. The VE testified further, however, that there are 40,000 surveillance system monitoring jobs in the national economy that a person could perform despite having the reaching limitations Dr. Jensen found. Accordingly, even if Dr. Jensen's opinion were credited, the ALJ's decision would remain supported by the VE's testimony. Admin. R. 69-70. *See Carmickle*, 533 F.3d at 1162-63 and n. 4 (error is harmless if the ALJ's determination remains supported despite the error). I find no harmful error in the ALJ's evaluation of the evidence from the state agency medical consultants.

## V.  Vocational Evidence

Garner contends the ALJ erroneously elicited testimony from the vocational expert with hypothetical assumptions that did not accurately reflect all of her functional limitations. The ALJ formed his vocational hypothetical based on the RFC assessment he reached. Garner contends he should have included additional limitations based on her subjective statements, Dr. Johnson's disability opinion, and Dr. Jensen's opinion. This argument simply restates challenges to the evidence that cannot be sustained for reasons already given. The ALJ properly discounted the evidence Garner's argument relies on. An ALJ is not required to incorporate limitations he found unsupported by the evidence in the record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th

Cir. 2008). *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Finally, Garner contends the ALJ's hypothetical assumptions should have included an additional limitation to reflect her moderate limitations in concentration, persistence, or pace. This argument has no merit and conflates the broad categories of function used at steps two and three of the disability determination process with the specific work-related capabilities used to formulate a claimant's RFC.

Limitations in concentration, persistence, or pace comprise one of four broad categories of function known as the "B criteria" because they generally appear in paragraph B of each listing for a mental impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). The degree of impairment in the B criteria determines whether a claimant's mental impairment surmounts the *de minimis* severity requirement of step two and whether it is equivalent in severity to any of the presumptively disabling conditions in the Listing of Impairments at step three. The B criteria are not used in determining a claimant's RFC, which involves consideration of an expanded list of specific work-related capabilities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

Here, the ALJ determined that, despite her limitations in the broad category of concentration, persistence, or pace, Garner retained the ability to perform simple, routine tasks involving only occasional contact with the public. Admin. R. 24. This conclusion reflects the findings and opinion of Dr. Prescott that Garner demonstrated fairly good concentration, memory, insight, and judgment and appeared to be of average intellectual functioning. Admin. R. 358. The ALJ's conclusion is further supported by the state agency psychologist's opinion that Garner could perform work broken down into simple task sequences and "could maintain concentration, persistence, and pace given

simple, repetitive tasks." Admin. R. 592. Accordingly, I find no error in the hypothetical assumptions used by the ALJ to elicit testimony from the vocational expert.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this **4th** day of February, 2015.

                                                  Robert E. Jones, Senior Judge
                                                  United States District Court